JOHN B. HUNTER

v.

URBAN B. HARRIS, ADMINISTRATOR.

*Evidence—Promissory Note—Action by Administrator—Issue as to Genuineness—Conflict of Evidence—Irrelevancy— Time and Place—Possession—Date—Whether Material—Presumption—Practice—Sworn Plea —Instructions—Remarks of Counsel.*

1. In an action by an administrator on a promissory note the execution of which is denied, the plaintiff may show that it existed prior to his ap-

Hunter v. Harris.

pointment among the papers of the deceased and in the place where he usually kept such papers.

2. Where the genuineness of a promissory note is in issue, the defendant may show such facts as would exclude the possibility or probability of its execution at the time and place indicated on its face.

3. While the date of the note is *prima facie* evidence of the time of its execution, it is not conclusive.

4. Evidence of but slight importance is admissible, if not wholly irrelevant.

5. Where the evidence is sharply conflicting, and no error of law has intervened, this court will not interfere with the verdict of the jury.

6. It is proper in a case wherein a sworn plea is filed, to instruct the jury to disregard the affidavit of the defendant, as such affidavit is not evidence.

7. The jury were properly instructed in the case presented. that it is immaterial whether the note was executed at the purported time and place, although the defendant had sought to prove that it was not made at such purported time and place. The rule stated is correct and applicable to the case presented.

8. Instructions which, taken together, are accurate and clear, are sufficient.

9 An objection to remarks of counsel can not be first raised in this court.

[Opinion filed October 3, 1888.]

APPEAL from the Circuit Court of Sangamon County; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. JOHN M. & JOHN MAYO PALMER, and BROWN, WHEELER & BROWN, for appellant.

Messrs. PATTON, HAMILTON & SHUTT, for appellee.

The date is no part of the note, nor does it show where it was made. Shaw v. Wood, 8 Ind. 518; 1 Daniel on Neg. Inst., Sec. 83; Michigan Ins. Co. v. Leavenworth, 30 Vt. 11.

If a note is not dated, it will be considered as dated at the time when made. Giles v. Bourne, 6 Maule & S. 73.

The place where the note purports to have been made, usually written before the date, is no part of the note. Hence no presumption exists that the note was written or signed at that place. The place mentioned in the date is only a suggestion as to where the maker resides, and is not considered an admis-

sion or stipulation that the demand of payment may be made at that place. Edwards on Bills and Notes, 152, 2d Ed; Anderson v. Drake, 14 Johns. 114; Taylor v. Snyder, 3 Den. 145.

Smith had paid about $60,000 for Hunter and it is perfectly reasonable that appellant, as he prospered in business after his discharge in bankruptcy, should have been willing to pay back more of this sum than $5,000. And this note, for anything that appears from the letter and what was said at the time by Smith (who seems to have been dissatisfied), may and most probably was made and delivered after the 6th of March, 1880, and dated back for some reason unknown to us. And this seems the more probable since the note was payable five years from date.

WALL, P. J. This case was here at a former term and was then reversed because certain evidence offered by appellant was rejected. 24 Ill. App. 637. A second trial resulted, as did the first, in a judgment for the appellee.

The action is assumpsit upon a promissory note for the sum of $10,000, alleged to have been given by appellant to William S. Smith, now deceased, on the 6th day of March, 1880, payable five years after date, with interest at the rate of six per cent. per annum from date.

The execution of the instrument was denied by sworn plea and the burden of proving it was thereby devolved upon the plaintiff.

The sole issue of fact was whether the defendant wrote his name there, as it was not suggested that he had authorized it to be written by another. The payee having died and the suit being maintained by his administrator, the defendant was incompetent to testify, and the proof consists mainly, on both sides, of the opinions of witnesses as to the signature, and sundry circumstances tending to support the respective positions of the parties. The appellee proved by a daughter of the deceased that she saw the note in his possession some months before his death, which occurred in May, 1883. During his last illness, which was protracted, she rendered him such assistance as he required in reference to his business mat-

ters, attended to the most of his writing and had occasion to examine his papers. At one time, probably in February, a man whose name was Harlin, called to pay his note, and at her father's request she went to the wallet where he kept such papers, and, in looking in the pocket market H, she saw the note in suit. She was surprised to see it, read it over and meant to speak to her father about it, but on account of his illness, and for other reasons possibly, she neglected to do so though she frequently noticed it after that time. When Mr. Smith died, this note and other papers of value were securely kept in manner described by her until the note matured and suit was brought upon it. The plaintiff produced the testimony of twenty-five persons to the effect that they were acquainted with the handwriting of the defendant and that, in their opinion, the signature in question was his.

On the part of defendant we find the testimony of an equal number of persons that they were acquainted with his handwriting, and that they had a contrary belief. Three of these had testified for the plaintiff, but had been led to change their opinions. Probably the jury were inclined to reject all the testimony of these three, thus leaving each side with twenty-two witnesses whose conflicting testimony was to be weighed and considered and to be given such credit as seemed warranted by their intelligence, means of knowledge, fairness and general capacity to speak upon the point in issue. The defendant also offered the evidence rejected on the first trial, and which is stated as fully as need be in the former opinion rendered in this case, which tended strongly to show that, at the time and place when and where the note purports to have been executed, the parties had a different transaction, and not this one, and therefore if this note was genuine it must have been made at some other time and place, and for some unknown reason dated as now appears.

It is urged on behalf of appellant that it was error to admit the evidence of the daughter of deceased as to the possession of the note by him, as already stated. We passed upon this point when the case was here before, and we are disposed to adhere to the views then expressed, in that respect. For the reasons then given, the objection is overruled.

In the second place, it is argued with great force and apparent confidence that the evidence does not support the verdict and that the court below erred in refusing a new trial. As already remarked, it may be said there are twenty-two witnesses arrayed on each side as to the verity of this signature. We can not now refer to the testimony of each in detail, though there are many matters which might well be dwelt upon, *pro et con*, as to their respective weight and value.

It is conceded the signature bears a close resemblance to the genuine, and if a forgery, it is a clever one. The proof thus offered by plaintiff is exceptionally strong. It comes from men living in different localities and engaged in different avocations, who were familiar with the defendant, and most of them had numerous and important transactions with him, wherein they became more or less acquainted with his handwriting. Nearly half of them were bank officers and the like, and by means of their daily occupation were especially skilled in regard to handwriting, and presumably their opinions should have extra weight on that account.

For the defendant, also, there were a number, though a smaller number, of such witnesses, who may be called experts, and the proof on the part of the defense in this respect is entitled to great weight and consideration by reason of its quantity and its quality.

There are not a few salient points on each side in reference to the amount of information (and the mode of its acquisition), the interest or bias of the various witnesses and the business and other relations they sustain to the parties, as well as the different degrees of confidence and force displayed in their respective statements.

A part of this testimony on both sides was in the form of depositions, but so far as it was oral the jury and the court below could tell better than we what credit should be given to each witness.

We do not advert to sundry matters of proof which were urgently pressed upon our attention in the argument as to the circumstances of the transactions which occurred on the 6th of March, 1880, the date of this note, the extensive business

Hunter v. Harris.

relations of the deceased with the appellant and his part-
ners, the various declarations and actions of the deceased,
seemingly inconsistent with the possession of this note if
genuine, the supposed improbability that it would have been
given by appellant, etc., nor shall we follow counsel in their
suggestions, explanations and theories in support of their
respective positions upon the main question of fact involved.
We have considered all these, and have carefully examined
the whole record, and, bearing in mind the large amount at
stake and the unfortunate consequences of error upon our
part in this respect, we are not impressed with the belief that
injustice has been done by this verdict.

Two juries have reached the conclusion that the signature
is genuine, though only the second jury had before them all
the proof contained in this record.

It is hardly necessary to quote or even suggest the well
settled rules now prevailing in courts of review, where there is
such a conflict of evidence. Applying those rules, we are
satisfied that we should not interfere upon the point now
under consideration, and that, unless some error of law has
intervened which tended to prejudice the appellant, the
judgment should be permitted to stand ; and this brings us to
the instructions given for appellee of which complaint is made
by appellant. The second instruction is said to be misleading.
It is as follows :

"2. The court instructs the jury that the affidavit of the
defendant denying the execution of the note, is not evidence ;
and they have no right to consider it in determining whether
the defendant executed and delivered the note in evidence."

It is argued in the brief that, as a matter of fact, the affi-
davit was not in evidence, and the effect was to call the atten-
tion of the jury to something not before them, as though it
was, and then stigmatize it as false and unworthy; this to
the prejudice of the appellant. We think no such consider-
ation could reasonably arise in the minds of the jury. Such
an instruction is often given in cases where a sworn plea is
necessary under the practice act, and is not improper, from
the fact that the jury will necessarily know that such an

affidavit has been made by the defendant, and, unless advised
by the court, they may not know that its only office is in aid
of the pleading, not in aid of the proof.   There was no error
in this respect.

In the third place a vigorous and ingenious argument has
been made to demonstrate that the Circuit Court erred in
giving the following instruction at the instance of appellee:

"3.   The court instructs the jury that it is not material
whether the note sued on was executed at the time and place
it bears date or at another time and place, provided you be-
lieve from all the evidence, that it was in fact signed by the
defendant and delivered by him to William S. Smith in the
lifetime of said Smith."

It is urged that, in effect, this advises the jury to disregard
the evidence offered by appellant, tending to show that the
note was not made at the time and place it bears date, and the
evidence in this connection tending to discredit the instru-
ment generally.   While this position is pressed upon us very
earnestly, we are unable to see anything substantial in it.
True, the appellant labored hard to prove the note was not
made at the purported time and place, and true, the court
here instructs the jury that such proof would not vitiate the
undertaking if it was in fact made at another time and place.
This is conceded to be good law, and the case was one where
it was applicable beyond all question, for it may be assumed
the jury concluded the note was not made at Buffalo on the
6th of March, 1880, but at a later date, and ante-dated for
some reason not shown.   What error was there in giving the
jury this instruction?   Had they not been so instructed they
might have found for defendant, though believing he made
the note, but not at the date therein given.   Such a finding
would have been manifestly wrong, and to provide against
the danger of it, the instruction was pertinent and proper.
The jury can not be presumed to have understood the court
to mean that all evidence tending to show that at said time
and place the note was not made, and that a different
and apparently inconsistent transaction occurred, was imma-
terial and to be disregarded.   That is not the obvious and

natural import of the instruction, and when taken in connection with the evidence referred to, and as to the competency whereof no objection is made, there is no reason to believe the jury were misled by it, even when it is considered alone. But, however this may be, all doubt disappears when we refer to the following instructions which were given at the instance of appellant on the same subject:

"5. The court further instructs you that the law presumes the note sued on in this case was executed (if at all) on the day it bears date, and this presumption continues until overcome by proof; and you can not presume, or infer without proof, that the note in controversy does not bear the true date.

"6. If you believe from the evidence that the note in controversy bears date March 6, 1880, the presumption is that it was executed (if at all) on that date, and this presumption continues, unless you believe from the evidence that it was made or executed on some other or different date."

If it could be supposed that, upon the third instruction for appellee, the jury might have received the impression suggested, it is impossible to believe they could have retained it after the reading of these. We think this objection is untenable.

A minor objection is raised in reference to the admission of the evidence of Miss Smith, that she was not at home during the month of March, 1880. She appeared to have been greatly relied upon by her father during the closing months of his life in all his business affairs, and it might have been inferred from her silence that she knew he made but one visit to appellant in March, 1880. We see no objection to this proof, in order to negative such an inference.

The matter, though of but slight weight, was not wholly irrelevant.

In the oral argument, some stress was laid upon certain extracts from the closing speech of plaintiff's attorney upon the trial. It does not appear that the attention of the court was called to the remarks referred to, and for this reason, no error can be assigned in that regard; but upon reading the

remarks, and without knowing in what connection, or in reply to what, from the other side, they were made, we think not much importance should be attached to this complaint.

No other objections were urged in the argument or in the printed brief, and we are of opinion the judgment of the Circuit Court should be affirmed.

*Judgment affirmed.*